UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

DENNIS HARRIS,

                Plaintiff,

      -against-

NASSAU COUNTY, POLICE OFFICER VELTE,
DETECTIVE RISPOLI, NASSAU COUNTY
POLICE, and OTHERS,

                Defendants.
---------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

**MEMORANDUM & ORDER**

**13-CV-4728 (NGG) (ST)**

      Plaintiff Dennis Harris brings this pro se action against Defendants Nassau County,

Police Officer Velte, Detective Rispoli,[1] and the Nassau County Police[2] (collectively,

"Defendants"), pursuant to 42 U.S.C. § 1983. (Am. Compl. (Dkt. 7).) Plaintiff alleges claims of

false arrest, malicious prosecution, violation of due process, denial of access to the courts,

deliberate indifference to medical needs, excessive force, and municipal liability. (Id.) Before

the court is Defendants' Motion to Dismiss (Defs.' Mot. to Dismiss (Dkt. 30)), and Plaintiff's

Opposition and Motion to Amend the Amended Complaint (Pl.'s Mem. in Opp'n. and Req. to

File Second Am. Compl. ("Pl.'s Opp'n and Mot. to Amend") (Dkt. 28)). For the reasons set

forth below, Plaintiff's Motion to Amend is DENIED, and Defendants' Motion to Dismiss is

GRANTED IN PART and DENIED IN PART.

---

[1] The first names of Defendants Velte and Rispoli are not included in the Complaint or the parties' subsequent briefing.

[2] The court interprets the Amended Complaint as attempting to name the Nassau County Police Department as a Defendant.

# I. BACKGROUND

## A. Factual Background

The following facts are taken from Plaintiff's Amended Complaint and matters of which judicial notice may be taken. See Halebian v. Berv, 644 F.3d 122, 131 & n.7 (2d Cir. 2011) (holding that on a motion to dismiss for failure to state a claim, courts may rely on documents incorporated by reference in the complaint, as well as "documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit" (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002))).

On June 16, 2013, Nassau County police officers arrested Plaintiff on petty larceny charges. (Am. Compl. ¶ 1.) Officer Velte searched Plaintiff's car and charged Plaintiff with numerous forgery offenses based on the items found in the car. (Id. ¶ 3.) The Nassau County Police Department (the "NCPD") impounded Plaintiff's car but never "issued [Plaintiff] any voucher, inventory receipt or evidence notice for the vehicle or the items allegedly contained therein." (Id.)

As Plaintiff was being driven back to the police station, he complained to Officer Velte that his handcuffs were too tight. (Id. ¶ 2.) Plaintiff claims that Officer Velte ignored his complaints and that he later was told by medical staff that he suffered from "handcuff syndrome." (Id.) Plaintiff also alleges that during his interrogation, Detective Rispoli told him that he did not believe Plaintiff was involved in any forgery crime but that he was going to charge Plaintiff anyway and the charges eventually would be dismissed. (Id. ¶ 4.) In addition to the forgery charges, Plaintiff ultimately was charged with violating an order of protection from Kings County. (Id.)

Plaintiff then was arraigned at the county district court, where he was held on $80,000 bail. (Id. ¶ 5.) Plaintiff was appointed counsel and placed in a "72 hour confinement" for about 10 days.[3] (Id. ¶ 6.) Plaintiff maintains that during this time, he was denied access to the law library or legal materials and did not receive medical treatment for his withdrawal from opiate use. (Id.)

On June 21, 2013, Plaintiff met with his assigned counsel, Toni Marie Angeli, who informed Plaintiff that his case was being presented to the grand jury that same day. (Id.) On June 26, 2013, the Nassau County Grand Jury issued an indictment against Plaintiff. (Id. ¶ 7.) Plaintiff was arraigned on the Indictment on July 9, 2013. (Id.) At Plaintiff's arraignment, Ms. Angeli petitioned for his release because Nassau County had not filed the Indictment pursuant to New York Criminal Procedure Law ("NYCPL") § 180.80. (Id.) Plaintiff's Petition for Release was denied, but his bail was reduced to $25,000. (Id. ¶ 8.)

Plaintiff's counsel told him that Nassau County "does not issue receipts or vouchers for seized property," and that Plaintiff would not be able to retrieve his car until the criminal case was over. (Id. ¶ 9.) However, Plaintiff claims that Defendants disposed of his vehicle prior to the conclusion of the criminal proceedings without notifying Plaintiff, his counsel, or the District Attorney's Office. (Pl.'s Opp'n and Mot. to Amend. ¶ 4.)

**B.    Procedural Background**

Plaintiff filed his Complaint on August 14, 2013. (Compl. (Dkt. 1).) On September 13, 2013, the court dismissed with prejudice Plaintiff's claims against Nassau County District Attorney Kathleen Rice and Nassau County Assistant District Attorney Michelle Haddad, and denied Plaintiff's request for injunctive relief. (See Sept. 13, 2013, Mem. & Order

---

[3] Neither party has explained what "72 hour confinement" means, or how this term can be reconciled with the fact that Plaintiff was confined for 10 days.

(Dkt. 6).) The court directed Plaintiff to file an amended complaint by October 18, 2013, naming the individuals personally responsible for the alleged denial of his constitutional rights. (Id.) On October 3, 2013, Plaintiff filed the Amended Complaint as directed. (Am. Compl.) Plaintiff seeks relief in the form of: (1) $25,000 against Officer Velte and $25,000 against Detective Rispoli; (2) $250,000 against Nassau County; and (3) the immediate release of his property, plus costs and any other just relief. (Id.)

On November 22, 2013, Defendants filed a motion to stay Plaintiff's § 1983 action because the underlying criminal matter was pending before state court. (Defs.' Mot. to Stay (Dkt. 10).) On January 2, 2014, Plaintiff filed a response in opposition to Defendants' Motion to Stay. (Pl.'s Resp. in Opp'n (Dkt. 13).) On July 8, 2014, the court granted Defendants' Motion to Stay pending resolution of Plaintiff's criminal proceedings and dismissed, sua sponte, Plaintiff's claim challenging the legality of his confinement. (See July 8, 2014, Mem. & Order (Dkt. 17).) On May 15, 2015, Defendants filed a letter indicating that Plaintiff had pleaded guilty in the underlying criminal proceeding to attempted possession of a forged instrument, in satisfaction of all charges. (See Defs.' May 15, 2015, Ltr. (Dkt. 18).) Defendants' letter further stated that on April 27, 2015, Plaintiff was sentenced to one and a half to three years of imprisonment in connection with his plea. (Id.) Accordingly, on June 5, 2015, the court lifted the stay on this action. (See June 5, 2015, Order (Dkt. 20).)

On August 3, 2015, Defendants filed their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mot. to Dismiss.) On September 2, 2015, Plaintiff filed his Opposition and Motion to Amend. (Pl.'s Opp'n and Mot. to Amend.) Plaintiff seeks to further amend the Amended Complaint to add claims that: (1) he was wrongfully held beyond the statutorily imposed maximum time of 144 hours under NYCPL § 180.80, and (2) he was denied

admission to the judicial diversion program pursuant to NYCPL § 216.05 based on an arbitrary decision by Nassau County Judge Frank Gulotta, Jr. (Id. ¶¶ 5- 6.) On October 16, 2015, Defendants filed a memorandum in further support of their Motion to Dismiss. (Defs.' Mem. of Law in Further Supp. of Mot. to Dismiss (Dkt. 32).)[4]

## II.    STANDARD OF REVIEW

### A.    Motion to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that unless a party may amend his pleading as of right pursuant to Rule 15(a)(1),[5] a party "may amend its pleading only with the opposing party's written consent or the court's leave," and the court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A court should deny leave to amend or to serve a supplemental pleading only upon "undue delay, bad faith or dilatory motive on the part of the [moving party], . . . undue prejudice to the [nonmoving party,] . . . [or] futility." Foman v. Davis, 371 U.S. 178, 182 (1962). An amendment is futile "when the proposed new pleading fails to state a claim on which relief can be granted. . . . The adequacy of a proposed amended complaint to state a claim is to be judged by the same standards as those governing the adequacy of a filed pleading." Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012).

### B.    Motion to Dismiss

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112

---

[4] On January 7, 2016, Plaintiff filed a motion to stay the proceedings, on the ground that he had been incarcerated on a parole violation. (Jan. 4, 2016, Mot. (Dkt. 34).) On March 22, 2016, Plaintiff filed a motion to withdraw his Motion to Stay (Mot. to Withdraw Mot. (Dkt. 35)), which the court granted (Apr. 14, 3016, Order (Dkt. 36)).

[5] Plaintiff cannot amend the Amended Complaint as of right because more than 21 days have passed between the time that Defendants filed their Motion to Dismiss and Plaintiff filed his Motion to Amend. See Fed. R. Civ. P. 15(a)(1).

(2d Cir. 2007). In reviewing a complaint, the court accepts as true all allegations of fact and draws all reasonable inferences from these allegations in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). In reviewing a complaint submitted pro se, the court reads the plaintiff's submissions liberally and interprets them as raising the strongest arguments they suggest. McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). This is because "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

Nevertheless, even a pro se complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).

A court considering a motion to dismiss under Rule 12(b)(6) generally may not consult evidence outside the pleadings. Robinson v. Gov't of Malay., 269 F.3d 133, 140 n.6 (2d Cir. 2001). However, "[i]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." Vasquez v. City of New York, No. 99-CV-4606 (DC), 2000 WL 869492, at *2 n.1 (S.D.N.Y. June 29, 2000) (quoting Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998)). Matters of public record of which the court may take judicial notice include arraignments, arrest reports, criminal complaints and indictments, and certificates of disposition. Garcia-Garcia v. City of New York,

6

No. 12-CV-1302 (CM), 2013 WL 3832730, at 1 n.1 (S.D.N.Y. July 22, 2013); Wingate v. Deas, No. 11-CV-1000 (ARR), 2012 WL 1134893, at *1 n.1 (E.D.N.Y. Apr. 2, 2012); see also Parker v. City of New York, No. 09-CV-910 (JG), 2010 WL 1693007, at *3 n.2 (E.D.N.Y. Apr. 28, 2010) (noting that courts routinely take judicial notice of documents filed in other courts).

Accordingly, here the court may take judicial notice of the Certificate of Disposition attached as Exhibit C to Defendants' Memorandum of Law, because it is a matter of public record. See Johnson v. Pugh, No. 11-CV-385 (RRM) (MDG), 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) (noting that a court in a § 1983 action may take judicial notice of a plaintiff's guilty plea, conviction, and sentencing in the underlying criminal case).

## III. DISCUSSION

### A. Proposed Claims for Amendment

The amendment sought by Plaintiff raises largely the same arguments already alleged in the Amended Complaint, with the exception of two additional claims. Specifically, Plaintiff alleges that he was denied his right to release, in violation of NYCPL § 180.80 (Pl.'s Opp'n and Mot. to Amend ¶ 5), and that he arbitrarily was denied the right to enter a judicial diversion program, in violation of NYCPL § 216.05 and the Equal Protection Clause of the Fourteenth Amendment (id. ¶ 1). For the reasons stated below, the court denies Plaintiff's Motion to Amend.

#### 1. Right to Release under NYCPL § 180.80

Plaintiff alleges that Defendants have instituted a "felony exam" policy whereby felony charges are reviewed by the court rather than a grand jury and that—since the felony exam was

scheduled by Plaintiff's assigned counsel past the statutory deadline—Plaintiff was denied his

right to release under NYCPL § 180.80. (Id.)

> NYCPL § 180.80 provides in relevant part:

>> Upon application of a defendant against whom a felony complaint has been filed with a local criminal court, and who, since the time of his arrest or subsequent thereto, has been held in custody pending disposition of such felony complaint, and who has been confined in such custody for a period of more than one hundred twenty hours or, in the event that a Saturday, Sunday or legal holiday occurs during such custody, one hundred forty-four hours, without either a disposition of the felony complaint or commencement of a hearing thereon, the local criminal court must release him on his own recognizance unless: 1. The failure to dispose of the felony complaint or to commence a hearing thereon during such period of confinement was due to the defendant's request, action or condition, or occurred with his consent[.]

N.Y. Crim. Proc. Law § 180.80(1).

By its terms, § 180.80 creates a waivable right for a detainee to be released from

detention if neither a court nor a grand jury has made a determination that reasonable cause

exists to believe that the detainee has committed a felony. However, § 180.80 does not apply if

an indictment was voted, a prosecutor's information was filed, a felony hearing was held, the

detainee consents to his detention, or the court is otherwise satisfied that the prosecution has

shown good cause why such order of release should not be issued. People v. Winslow, 530

N.Y.S.2d 749, 752 (Sup. Ct. 1988).

Plaintiff concedes that his assigned counsel and the Assistant District Attorney agreed

upon a felony exam date after the time limits imposed by § 180.80. (Id.) Since demanding a

felony exam after the § 180.80 time period is deemed as waiving a detainee's statutory right

under § 180.80, Plaintiff has no claim under this provision. See People v. Romero, 655

N.Y.S.2d 806, 807 (Sup. Ct. 1997) (finding that counsel's offer to demand a felony exam at a

future date after the § 180.80 deadline has the effect of waiving the detainee's release rights under that provision). Therefore, it would be futile for Plaintiff to amend his Amended Complaint to add this claim.

### 2. Denial of Entry into Judicial Diversion Program

Plaintiff alleges that despite meeting the statutory requirement and being recommended by the court's evaluator, Nassau County Judge Gulotta arbitrarily denied Plaintiff admission to a judicial diversion program for substance abuse treatment. (Pl.'s Opp'n and Mot. to Amend ¶ 6.) Plaintiff further maintains that his equal protection rights were violated because "he has personally witnessed the disproportionate granting of white defendants to judicial diversion by defendant throughout the course of his detention." (Id.) Plaintiff therefore alleges that Defendants' administration of the program is "biased against non-whites like Plaintiff." (Id.)

Judicial diversion programs in New York are governed by NYCPL § 216.05, which provides in relevant part:

> When an authorized court determines, pursuant to paragraph (b) of subdivision three of this section, that an eligible defendant should be offered alcohol or substance abuse treatment, or when the parties and the court agree to an eligible defendant's participation in alcohol or substance abuse treatment, an eligible defendant may be allowed to participate in the judicial diversion program offered by this article. Prior to the court's issuing an order granting judicial diversion, the eligible defendant shall be required to enter a plea of guilty to the charge or charges[.]

N.Y. Crim. Proc. Law § 216.05.

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated individuals alike. Young v. Suffolk County, 705 F. Supp. 2d 183, 204 (E.D.N.Y. 2010). When challenging the selective enforcement of a law under the Equal Protection Clause, a plaintiff must prove that: (1) compared with other similarly situated individuals, he was treated differently; and (2) "such selective treatment was based on

9

impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000) (internal citation omitted).

To be "similarly situated," the individual with whom a plaintiff attempts to compare himself "must be similarly situated in all material respects." Shumway v. United Parcel Serv. Inc., 118 F.3d 60, 64 (2d Cir. 1997). To set forth factual allegations sufficient to state an equal protection claim, the plaintiff also cannot rely on conclusory allegations devoid of factual support. See Schuler v. Bd. of Educ. of Cent. Islip Union Free Sch. Dist., No. 96-CV-4702 (JG), 2000 WL 134346, at *7 (E.D.N.Y. Feb. 1, 2000) (dismissing conclusory equal protection claim in pro se case).

Plaintiff's equal protection claim fails for two reasons. First, to succeed on his equal protection claim, Plaintiff must show that the white applicants who were accepted into the judicial diversion program had similar backgrounds and were in similar circumstances as he was. See Shumway, 118 F.3d at 64. Here, Plaintiff has not offered any facts suggesting that he and the admitted applicants were similarly situated in all material respects. Therefore, he fails to state an equal protection claim. See Guan N. v. N.Y.C. Dep't of Educ., No. 11-CV-4299 (AJN), 2013 WL 67604, at *17 (S.D.N.Y. Jan. 7, 2013) (holding that the court need not accept conclusory statements that plaintiff was treated differently than similarly situated individuals when the complaint neither identified these individuals nor contained facts indicating that they were in fact similarly situated); Parkash v. Town of Southeast, No. 10-CV-8098 (VB), 2011 WL 5142669, at *8 (S.D.N.Y. Sept. 30, 2011) (dismissing a selective enforcement equal protection claim where the complaint referenced "unspecified similarly situated persons without accompanying examples").

Second, Plaintiff fails to set forth sufficient factual allegations that acceptance into the program was based on impermissible considerations. Plaintiff offers nothing but a conclusory statement that he personally witnessed more white defendants being granted admission to the judicial diversion program and that, therefore, Judge Gulotta's decision not to admit Plaintiff to the program was discriminatory. (Pl.'s Opp'n and Mot. to Amend ¶ 6.) However, conclusory allegations of disparate treatment, or Plaintiff's personal opinion that such treatment was motivated by discriminatory intent, are insufficient to state an equal protection claim. See e.g., Gordon v. City of New York, No. 10-CV-5148 (CBA) (LB), 2012 WL 1068023, at *9 (E.D.N.Y. Mar. 29, 2012) (dismissing plaintiff's equal protection claim because plaintiff's allegation that he was conspired against solely because he was "of a minority race" was wholly conclusory and unsupported); Okoh v. Sullivan, No. 10-CV-2547 (SAS), 2011 WL 672420, at *6 (S.D.N.Y. Feb. 24, 2011) (holding that plaintiff's conclusory allegation that he was adversely treated on account of his African-American race or Nigerian descent, relative to non-African-American student, without more, was insufficient to raise a reasonable inference that there was an equal protection violation), aff'd, 441 F. App'x 813 (2d Cir. 2011) (summary order). Even under a liberal construction, such conclusory allegations fail to state an equal protection claim. See Schuler, 2000 WL 134346, at *7 (dismissing equal protection claim contained in pro se complaint because plaintiff relied entirely on conclusory allegations).

Finally, the court notes that New York courts are afforded great deference in making judicial diversion determinations. People v. Williams, 963 N.Y.S.2d 899 (App. Div. 2013). Even if Plaintiff had met the criteria set forth in NYCPL § 216.05, the state court still would have had discretion to deny him entry into the program. See People v. Hombach, 919 N.Y.S.2d 791 (Co. Ct. 2011) (holding that a defendant has no inherent right to be granted

judicial diversion and that the discretion of the court permits denial of diversion even without objection by the district attorney). Therefore, the court finds that it would be futile for Plaintiff to amend the Amended Complaint to add this claim.

Because both of Plaintiff's proposed additional claims are futile, the court denies Plaintiff's Motion to Amend.

## B. False Arrest and Malicious Prosecution

In support of his false arrest and malicious prosecution claims, Plaintiff alleges that during an interrogation following his arrest, Detective Rispoli stated that while he "did not believe [P]laintiff was involved in any crime relating to the forged instruments," he was going to "charge [Plaintiff] anyway and the charges would eventually be dismissed." (Am. Compl. ¶ 4.) In addition, Plaintiff alleges that Detective Rispoli "did not properly investigate charges nor convey the alleged evidence truthfully." (Id. ¶ 15.)

A § 1983 claim for false arrest—resting on the Fourth Amendment right of an individual to be free from unreasonable seizures—is substantially the same as a claim for false arrest under New York law. Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007). A plaintiff bringing a false arrest claim in New York must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of his confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). To state a claim for malicious prosecution, a plaintiff is required to establish "(1) the initiation or continuation of a criminal proceeding; (2) termination of the criminal proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003).

Where an underlying alleged false arrest or malicious prosecution has led to a conviction—including one entered following a guilty plea—and that conviction remains unchallenged, Fourth Amendment claims are barred. See Younger v. City of New York, 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007) (holding that Fourth Amendment claims for false arrest, false imprisonment, and malicious prosecution are barred by convictions entered on guilty pleas); Flemming v. City of New York, No. 02-CV-4113 (PKC), 2006 WL 1006263, at *3 (S.D.N.Y. Apr. 18, 2006) (holding that defendant's guilty plea barred him from raising false arrest and malicious prosecution claims because the conviction was not otherwise declared invalid).

As Plaintiff's Certificate of Disposition shows, he eventually pleaded guilty to attempted possession of a forged instrument, in satisfaction of all charges. (Defs.' Mot. to Dismiss, Ex. C.) Because Plaintiff pleaded guilty to the underlying charges, his § 1983 claims for false arrest and malicious prosecution both fail. See Rivera v. City of Yonkers, 470 F. Supp. 2d 402, 408 (S.D.N.Y. 2007) ("Because Plaintiff pled guilty to one of the crimes for which he was arrested . . . Defendants have a complete defense to Plaintiff's claim for false arrest. In addition, as this guilty plea represents a termination of the case that was not in favor of the accused, Plaintiff cannot maintain his claim for malicious prosecution."); Timmins v. Toto, 91 F. App'x 165, 166 (2d Cir. 2004) (summary order) ("[In] actions asserting false arrest, false imprisonment, or malicious prosecution, . . . the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested." (citing Cameron v. Fogarty, 806 F.2d 380, 3987 (2d Cir. 1986))).

## C. Violation of Due Process

Plaintiff claims that Defendants violated his Fourteenth Amendment due process rights by failing to notify him of the necessary procedures to recover the car that was seized from him

in connection with his June 16, 2013, arrest. (Am. Compl. ¶¶ 3, 8.) Specifically, Plaintiff maintains that his counsel told him that Nassau County "does not issue receipts or vouchers for seized property" and that Plaintiff would not be able to retrieve his car until the criminal case is over. (Id. ¶ 9.) However, Plaintiff was "not issued any voucher, inventory receipt or evidence notice for the vehicle or the items allegedly contained therein" after his car was seized. (Id.) Plaintiff claims that Defendants ultimately disposed of his vehicle prior to the conclusion of the criminal proceedings without notifying Plaintiff, his counsel, or the District Attorney's Office. (Pl.'s Opp'n and Mot. to Amend ¶ 4.)

The Due Process Clause of the Fourteenth Amendment guarantees that no person shall be deprived "of life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1. "The touchstone of due process, of course, is 'the requirement that a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'" Spinelli v. City of New York, 579 F.3d 160, 169 (2d Cir. 2009) (quoting Mathews v. Eldridge, 424 U.S. 319, 348-49 (1976)). One of the primary purposes of the notice requirement is to ensure that the opportunity for a hearing is meaningful. See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) ("Th[e] right to be heard has little reality or worth unless one is informed that the matter [affecting one's property rights] is pending and can choose for himself whether to appear or default, acquiesce or contest.").

"In evaluating what process satisfies the Due Process Clause, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006) (internal citations and quotation marks omitted). When the deprivation is "random and unauthorized," pre-deprivation procedures are simply impracticable

because the state cannot know when such deprivation will occur. Hudson v. Palmer, 468 U.S. 517, 533 (1984). In such cases, an adequate post-deprivation remedy is a defense to a § 1983 due process claim. Id. In contrast, when the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing, so "the availability of post-deprivation procedures will not, ipso facto, satisfy due process." Rivera-Powell, 470 F.3d at 465 (internal quotation marks and citation omitted).

The Second Circuit has made clear that a plaintiff may proceed in a § 1983 action alleging a violation of due process rights for failure to provide adequate notice of the procedure by which he could recover seized property. See Butler v. Castro, 896 F.2d 698, 704 (2d Cir. 1990). In McClendon v. Rosetti, the Second Circuit held that New York City's Administrative Code § 435-4.0 was unconstitutional as applied to persons with claims concerning non-contraband items not needed as evidence, because the statute's notice requirements were deficient and it unconstitutionally placed certain burdens of proof on defendants seeking return of their property. 460 F.2d 111, 116 (2d Cir. 1972). Following McClendon, Judge Morris Lasker of the Southern District of New York set forth procedures for the City governing the recovery of seized property in an unpublished order issued on July 15, 1974 ("the Lasker Order"). The Second Circuit summarized the Lasker Order in Butler:

> Under Judge Lasker's order, a voucher must be given to an arrestee for non-contraband property seized. The voucher must also give notice of the procedures to be followed to recover such property. A claimant must make a demand upon the property clerk for his property or money within 90 days of the earlier of (i) the termination of the criminal proceeding, or (ii) the issuance by the District Attorney of a release indicating that the property or money is not needed as evidence. The City must, within ten days of a timely

15

> demand, either return the item or items in question or initiate judicial
> action to authorize their continued detention. In the absence of a
> timely demand, the property clerk may dispose of the property.

896 F.2d at 702-03.

Accepting Plaintiff's factual allegations as true, the court finds that he has stated a claim

that he did not receive adequate notice of his rights and was not given an adequate opportunity to

be heard about the seizure of his vehicle. It is true that Plaintiff received a copy of the NCPD's

Impound Worksheet/Invoice,[6] but the worksheet appears to be deficient. While the worksheet

contains descriptive information about Plaintiff's vehicle, it does not contain any instructions as

to how Plaintiff might retrieve his vehicle. It may be the case that instructions can be found on

the backside of the worksheet, but neither party has included the backside in their submissions.

Without such instructions, Plaintiff would not have received notice of the necessary procedures

to recover his property. Although Plaintiff's counsel told him that he would not be able to

retrieve his car until the criminal case was over, there is no indication that any procedure was in

place to notify Plaintiff as to how he might make a motion or request a hearing to ensure the

recovery of his vehicle once the case had concluded. (See Am. Compl. ¶ 9.) Therefore, the

court finds that Plaintiff has adequately stated a claim that Defendants violated his due process

rights by seizing his vehicle without notice, and this claim survives Defendants' Motion to

Dismiss.

### D.     Access to the Courts

Plaintiff alleges that he was denied his constitutional right of access to the courts while he

was confined, because he remained in the so-called 72-hour lock up for about ten days without

access to the law library or legal materials. (Id. ¶ 6.)

---

[6] Plaintiff attached the worksheet to his Motion to Withdraw. (Mot. to Withdraw Mot. at 2.) The worksheet is also attached to Defendants' Motion to Dismiss as Ex. G. (Defs.' Mot. to Dismiss, Ex. G.)

The Constitution guarantees confined individuals meaningful access to courts, which—in the case of pro se litigants—includes access to a facility's law library or an alternative source of legal information. See Bounds v. Smith, 430 U.S. 817, 830 (1977) (holding that making law library facilities available to incarcerated individuals is one constitutionally acceptable method of providing meaningful access to the courts but that providing some degree of professional or quasi-professional legal assistance to individuals would also be appropriate). However, access to legal assistance need not be unfettered, and facilities "may place reasonable restrictions on inmates' use of facility law libraries as long as those restrictions do not interfere with inmates' access to the courts." Melendez v. Haase, No. 04-CV-73 (PKC), 2010 WL 5248627, at *7 (S.D.N.Y. Dec. 15, 2010) (internal quotation marks and citation omitted). Furthermore, "[b]ecause law libraries and legal assistance programs do not represent constitutional rights in and of themselves, but only the means to ensure 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts,' prisoners must demonstrate 'actual injury' in order to have standing." Benjamin v. Fraser, 264 F.3d 175, 185 (2d Cir. 2001) (quoting Lewis v. Casey, 518 U.S. 343, 351 (1996)).

Plaintiff's claim that he was denied access to the courts fails for two reasons. First, in light of the fact that Plaintiff was only confined for roughly 10 days, any abridgment of his constitutional right during that time was de minimis and insufficient to sustain a cause of action. See Walker v. Mahoney, 915 F. Supp. 548, 555 (E.D.N.Y. 1996) (holding that the abridgement of the inmate's substantive due process right of access to courts resulting from his segregated confinement for a period of 23 days was de minimis); Jones v. Smith, 784 F.2d 149, 152 (2d Cir. 1986) (affirming dismissal of right-of-access claim in light of 30-day period of solitary confinement, which the court regarded as de minimis).

17

Second, Plaintiff alleges only that he was denied access to the law library or legal materials, but he does not claim to have suffered any actual injury because of that denial. (Am. Compl. ¶ 6.) Plaintiff does not allege any facts which suggest that his legal claims somehow were prejudiced due to limited access to the law library or legal materials. Without any allegation of injury or harm, the restrictions alleged in the Amended Complaint do not rise to the level of unconstitutional obstruction of access to courts. See Johnson v. Nassau County, No. 13-CV-6510 (JS) (WDW), 2014 WL 294250, at *6 (E.D.N.Y. Jan. 24, 2014) (holding that plaintiff "failed to state a plausible claim for relief" regarding access to the prison law library because he "made no allegations regarding an actual injury he suffered due to the allegedly inadequate law library or insufficient access to the law library"); Simmons v. Adamy, 987 F. Supp. 2d 302, 308 (W.D.N.Y. 2013) (dismissing plaintiff's claim regarding denial of access to the prison law library due to simultaneous scheduling with religious services, because "plaintiff offers no evidence that he was harmed by the lack of more frequent law library access"). Therefore, the court finds that Plaintiff has failed to plead facts sufficient to state a claim for a violation of due process based on denial of access to the courts, and this claim is dismissed.

### E.    Deliberate Indifference to Medical Needs

Plaintiff alleges that he did not get "medical treatment for his withdrawal from opiate use" while he was incarcerated and that this purportedly inadequate medical care constitutes a violation of the Eighth Amendment. (Am. Compl. ¶ 6.)

In order to establish an Eighth Amendment claim arising out of the provision of inadequate medical care, a prisoner must show "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). The standard of deliberate indifference includes both an objective and subjective component. First, "the deprivation alleged by the

prisoner must be in objective terms 'sufficiently serious' such that the deprivation 'den[ied] the minimal civilized measure of life's necessities.'" Branham v. Meachum, 77 F.3d 626, 630-31 (2d Cir. 1996) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, with regard to the subjective component, defendants "must have acted with deliberate indifference in that they 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" Id. (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)).

To satisfy the subjective component, a plaintiff must do more than simply plead that medical or prison personnel acted negligently. See Estelle, 429 U.S. at 105-06 (holding that "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference"). Rather, a plaintiff must allege that the defendant acted with a state of mind akin to criminal recklessness. Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003). Thus, to substantiate a claim of deliberate indifference to medical needs, a plaintiff must establish two elements: (1) that he or she suffered from a "serious medical condition," and (2) that this condition was met with "deliberate indifference." Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009).

Although drug or alcohol withdrawal does not necessarily constitute an objectively serious medical condition, courts in this circuit have found that medical conditions resulting from such withdrawals satisfy the objective prong. See Iacovangelo v. Corr. Med. Care, Inc., 624 F. App'x 10, 12 (2d Cir. 2015) (finding plaintiff's need for medically supervised drug detoxification and fact that she was vomiting in her toilet sufficient to plead an objectively serious medical condition); Caiozzo, 581 F.3d at 69 (finding "there is no dispute that [plaintiff] had a serious medical condition" where he suffered from alcohol withdrawal).

19

However, even assuming that Plaintiff could satisfy the objective component, his claim for deliberate indifference fails because he has not plead facts sufficient to satisfy the subjective component. Plaintiff states only that he "did [not] get medical treatment for his withdrawal from opiate use." (Am. Compl. ¶ 5.) Nowhere does he allege that Defendants subjectively knew about and disregarded his purportedly serious medical condition.[7] See Shepherd v. Powers, No. 11-CV-6860 (LTS) (RLE), 2012 WL 4477241, at *6 (S.D.N.Y. Sept. 27, 2012) (finding that even if plaintiff's allegation that he suffered "severe pain in his back, fingers and genitals" was sufficient to meet the objective component, his Eighth Amendment claim failed because he did not plead facts sufficient to allege defendants' subjective deliberate indifference). Accordingly, the court finds that Plaintiff has failed to state a claim for deliberate indifference, and this claim is dismissed.

## F.    Excessive Force

Plaintiff brings a claim of excessive force based on the use of handcuffs during his arrest. (Am. Compl. ¶ 2.) Specifically, Plaintiff alleges that while being driven in the back of the police car, he complained to Officer Velte about the "pain to his wrists from the tightening handcuffs." (Am. Compl. ¶ 2.) After seeking treatment for the pain sustained from the handcuffs, Plaintiff was told by medical staff that he suffered from "handcuff syndrome." (Id.)

The Fourth Amendment prohibits police officers from using an unreasonable degree of force in carrying out an arrest. Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010). To determine whether an officer's use of handcuffs constitutes excessive force, the court must

---

[7] Defendants argue that Plaintiff did in fact receive treatment for his opiate withdrawal, and they attach documentation to that effect from the Armor Correctional Health Services. (Defs.' Mot. to Dismiss, Ex. F.) However, the court will not consider this document at this stage of the proceedings. See Robinson, 269 F.3d at 140 n.6 (holding that a court considering a motion to dismiss under Rule 12(b)(6) generally may not consult evidence outside the pleadings).

consider whether "1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." Esmont v. City of New York, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005).

Arrests frequently involve the application of handcuffs, which, in order to be effective, must be "tight enough to prevent an arrestee's hands from slipping out." Grant v. City of New York, 500 F. Supp. 2d 211, 217 (S.D.N.Y. 2007). There is a "consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." Lynch ex rel. Lynch v. City of Mount Vernon, 567 F. Supp. 2d 459, 468-69 (S.D.N.Y. 2008). While "overly tight handcuffing can constitute excessive force," the lack of a continuing injury beyond temporary discomfort "is fatal to [an] excessive force claim." Id. at 468.

In the Second Circuit, plaintiffs face a high threshold for excessive force claims based on tight handcuffs. See e.g., Boley v. Durets, No. 12-CV-4090 (ARR) (JO), 2013 WL 6562445, at *8 (E.D.N.Y. Dec. 10, 2013) (finding claim that tight handcuffs caused "extreme anguish and pain" did not allege lasting physical injury sufficient to support a claim of excessive force); Alford v. City of New York, No. 11-CV-0622 (ERK) (MDG), 2012 WL 3764429, at *4 (E.D.N.Y. Aug. 29, 2012) (holding that plaintiff's claim of tight handcuffs that left a red line on his wrists for a week was not sufficient to survive a motion to dismiss his excessive force claim); Wilder v. Village of Amityville, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003) (holding that handcuffing that caused inflammation for a period of 24 hours did not rise to the level of excessive force).

While Plaintiff alleges that he suffered from handcuff syndrome, he does not claim to have suffered any lasting physical injuries beyond temporary discomfort during his arrest. (Am.

21

Compl. ¶ 2.) Nor does he explain what handcuff syndrome is or what specific injuries he suffered as a result. (Id.) As such, Plaintiff's allegation is insufficient to plead a claim of excessive force. See Corsini v. Bloomberg, 26 F. Supp. 3d 230, 243 (S.D.N.Y. 2014) (finding arrestee's claim that he suffered a "physical injury" from tight handcuffs, without further specifying the injury, to be insufficient to state an excessive force claim) aff'd in part, appeal dismissed in part sub nom. Corsini v. Nast, 613 F. App'x 1 (2d Cir. 2015) (summary order); Boley, 2013 WL 6562445, at *8. Accordingly, the court finds that Plaintiff has failed to plead facts sufficient to state a claim for excessive force, and this claim is dismissed.

### G. Plaintiff's Monell Claim against Nassau County

Plaintiff asserts multiple claims which may be interpreted as attempting to hold Nassau County liable for the alleged constitutional violations of Defendants Velte and Rispoli. Plaintiff maintains that Nassau County has (1) a "custom and practice of searching and seizing vehicles . . . in violation of [P]laintiff's federally protected rights"; (2) a "custom of cruelty to arrestees, like [P]laintiff"; and (3) a "custom of overcharging criminal defendants, like [P]laintiff, based on impermissible standards (race, class[, and] gender)." (Am. Compl. ¶¶ 11, 13, 14.)

To assert a § 1983 claim against a municipality, a plaintiff must satisfy the requirements of Monell v. N.Y.C. Dept. of Soc. Servs., 436 U.S. 658 (1978). Under Monell and its progeny, a municipality generally only may be held liable for the constitutional violations of its employees when such violations result from the municipality's official policy. Id. at 693. At the pleading stage, "the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."

Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (internal citation and quotation marks omitted).

Plaintiff's Monell pleadings are insufficient to survive a motion to dismiss. Indeed, Plaintiff's claims are supported by nothing more than conclusory, boilerplate statements. Plaintiff has not specifically identified an official policy or explained how that policy caused him to suffer the denial of a constitutional right. See Smith v. City of New York, 290 F. Supp. 2d 317, 322 (E.D.N.Y. 2003) (holding that a conclusory, boilerplate assertion of a municipal policy or custom was insufficient to survive motion to dismiss); Econ. Opportunity Comm'n of Nassau Cty. v. County of Nassau, Inc., 47 F. Supp. 2d 353, 370 (E.D.N.Y. 1999) (dismissing municipal liability claim where plaintiffs "[did] not proffer any facts in support of the conclusory allegation that the defendants' conduct amounts to a custom or policy, or that this custom or policy caused the plaintiffs' injuries"). Accordingly, the court finds that Plaintiff has failed to plead facts sufficient to state claims for municipal liability under Monell, and these claims are dismissed.

## H.    Plaintiff's Claims against Nassau County Police Department

Plaintiff's Amended Complaint names the Nassau County Police as a defendant, and the court interprets this to be an attempt to sue the NCPD as a whole. (See Am. Compl.) However, any such attempt fails because the NCPD is a non-suable entity.

Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore cannot sue or be sued. See, e.g., Baker v. Willett, 42 F. Supp. 2d 192, 197 (N.D.N.Y.1999) ("A police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity."); Fanelli v. Town of Harrison, 46 F.

23

Supp. 2d 254, 257 (S.D.N.Y. 1999) (dismissing claims against a local police department on the same ground). Because the NCPD is an administrative arm of the municipality of Nassau County, any claims against it must be dismissed. See e.g., Daly v. Ragona, No. 11-CV-3836 (JFB) (WDW), 2013 WL 3428185, at *10 (E.D.N.Y. July 9, 2013) (dismissing claim against NCPD because NCPD is an administrative arm of a municipality); Rose v. County of Nassau, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012) (same).

## IV. CONCLUSION

For the reasons set forth above, the court DENIES Plaintiff's Motion to file a Second Amended Complaint and GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss. Plaintiff's due process claim may proceed. All other claims by Plaintiff are DISMISSED.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
　　　May 23, 2016

/NICHOLAS G. GARAUFIS
United States District Judge